Slip Op. 16-97

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SUNPREME INC.,<br><br>      **Plaintiff,**<br><br>v.<br><br>UNITED STATES,<br><br>      **Defendant,**<br><br>and<br><br>SOLARWORLD AMERICAS INC.,<br><br>      **Defendant-Intervenor.** | **Before: Claire R. Kelly, Judge**<br><br>**Court No. 15-00315**<br>**PUBLIC VERSION** |

## <u>OPINION</u>

[Granting Plaintiff's motion for judgment on the agency record and entering judgment for Plaintiff.]

Dated: October 11, 2016

<u>John Marshall Gurley</u> and <u>Nancy Aileen Noonan</u>, Arent Fox LLP, of Washington, DC, argued for plaintiff. With them on the brief was <u>Diana Dimitriuc-Quaia</u>.

<u>Tara Kathleen Hogan</u>, Trial Counsel, Commercial Litigation Branch – Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant. With her on the brief were <u>Justin Reinhart Miller</u>, Senior Trial Counsel, International Trade Field Office, Civil Division, U.S. Department of Justice, of New York, NY, <u>Benjamin C. Mizer</u>, Principal Deputy Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and Reginald T. Blades, Assistant Director. Of counsel on the brief was <u>Paula Smith</u>, Senior Attorney, Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection of New York, NY.

<u>Timothy C. Brightbill</u> and <u>Maureen Elizabeth Thorson</u>, Wiley Rein, LLP, of Washington DC, argued for defendant-intervenor. With them on the brief was <u>Usha Neelakantan</u>.

     Kelly, Judge:  This action is before the court on Plaintiff's USCIT Rule 56.1 motion for judgment on the agency record challenging United States Customs and Border Protection's ("Customs" or "CBP") determination to require that Plaintiff file its entries as type "03" entries subject to antidumping and countervailing duty ("AD/CVD") orders on crystalline silicon photovoltaic cells, whether or not assembled into modules from the People's Republic of China ("Orders").[1]  See Pl.'s Rule 56.1 Mot. J. Agency R., May 11, 2016, ECF No. 102 ("Pl.'s 56.1 Mot."); CBP Notices of Action at 000001–000010, CD 1, CBP AR 000001–000010 (Apr. 20, 2015–May 20, 2015) ("CBP Notices of Action");[2] Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, From the People's Republic of China, 77 Fed. Reg. 73,018 (Dep't Commerce Dec. 7, 2012) (amended final determination of sales at less than fair value, and antidumping duty order) ("AD Order") and Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China, 77 Fed. Reg. 73,017 (Dep't Commerce Dec. 7, 2012) (countervailing duty order) ("CVD Order").   As a result of CBP's determination, it began collecting cash deposits and suspending liquidation on Plaintiff's entries because it considered Plaintiff's merchandise to fall within the scope of Orders. See CBP Notices of Action; CVD Order, 77 Fed. Reg. 73,017; AD Order, 77 Fed. Reg. 73,018.

---

[1] CBP's determination was not published in the Federal Register.

[2] On February 12, 2016, Defendant submitted indices to the confidential and public administrative records, which can be found at ECF Nos. 92 and 93, respectively.  All further documents from the administrative record may be located in those appendices.

**PUBLIC VERSION**

Plaintiff began depositing AD/CVD duties in order to enter its merchandise from approximately April 20, 2015 until December 16, 2015, <u>See</u> Entry Documents at 000957–001250, CD 38, CBP AR 000957–001250 (June 3, 2015–Nov. 5, 2015) ("Entry Documents"), when the court entered a temporary restraining order ("TRO") restraining CBP from requiring Plaintiff to pay cash deposits on its entries until December 28, 2015.[3] <u>See</u> Am. Mem. and TRO, Dec. 16, 2015, ECF No. 36; <u>Sunpreme Inc. v. United States</u>, 40 CIT __, __, 145 F. Supp.3d 1271, 1299 (2016).

Plaintiff commenced this action pursuant to § 2631 of the Customs Court Act of 1980, as amended, 28 U.S.C. § 2631(i) (2012). Compl., Dec. 3, 2015, ECF No. 5. SolarWorld Americas, Inc. ("SolarWorld") moved to intervene, <u>see</u> Unopposed Mot. Intervene, Dec. 9, 2015, ECF No. 15, and the court granted that motion pursuant to USCIT Rule 24(b) on December 10, 2015. <u>See</u> Mem. and Order, Dec. 10, 2015, ECF No. 21.

---

[3] On December 28, 2015, the court extended its initial TRO to January 11, 2016 unless extended by further. <u>See</u> Order Extending TRO Confidential Version 2, Dec. 28, 2015, ECF No. 48. On January 8, 2016, the court granted Plaintiff's motion for a preliminary injunction. <u>See</u> <u>Sunpreme Inc. v. United States</u>, 40 CIT __, __, 145 F. Supp. 3d 1271, 1299 (2016). The preliminary injunction expired upon the issuance of a preliminary or final scope determination by the U.S. Department of Commerce ("Commerce") "to the effect that entries of solar modules containing bifacial thin film cells made with amorphous silicon from the People's Republic of China that are the subject of this action are included within the scope of" the Orders. <u>See</u> <u>Sunpreme</u>, 40 CIT __, __, 145 F. Supp.3d at 1299.

On July 29, 2016, Commerce issued an affirmative final scope determination. <u>See</u> Letter from Plaintiff Notifying the Court of Scope Decision at Att., Aug. 5, 2016, ECF No. 109; <u>see also</u> <u>AD Order</u>, 77 Fed. Reg. at 73,018, <u>CVD Order</u>, 77 Fed. Reg. at 73,017. Since the preliminary injunction expired upon Commerce's issuance of an affirmative scope determination, Commerce is no longer enjoined from collecting cash deposits on Plaintiff's imports. <u>See</u> <u>Sunpreme</u>, 40 CIT at __, 145 F. Supp.3d at 1299. As a result of Commerce's affirmative scope ruling, Commerce's regulations provide any suspension of liquidation will continue and that Commerce will instruct CBP "to suspend liquidation and to require a cash deposit of estimated duties, at the applicable rate, for each unliquidated entry on or after the date of initiation of the scope inquiry." 19 C.F.R. § 351.225(l)(3) (2015).

Plaintiff filed a motion for judgment on the agency record pursuant to USCIT Rule 56.1.

Pl.'s 56.1 Mot.   Defendant and Defendant-Intervenors filed responses to the Plaintiff's

motion.   See Def.'s Mem. Resp. Pl.'s Mot. J. Agency R. Confidential Version, Aug. 19,

2016, ECF No. 112 ("Def.'s Resp. Br."); Resp. Br. Def.-Intervenor SolarWorld Americas,

Inc. Confidential Version, Aug. 19, 2016, ECF No. 113; Resp. Br. Def.-Intervenor

SolarWorld Americas, Inc. Revised Confidential Version, Aug. 26, 2016, ECF No. 117

("SolarWorld Resp. Br.").   Briefing concluded on September 16, 2016, when Plaintiff filed

its reply brief.   See Reply Br. of Pl. Sunpreme Inc. Confidential Version, Sept. 16, 2016,

ECF No. 123 ("Sunpreme Reply Br.").   The court held oral argument on October 7, 2016.

See Confidential Oral Arg., Oct. 7, 2016, ECF No. 133.

## BACKGROUND

Plaintiff is a U.S. company that imports solar modules produced by Jiawei

Solarchina (Shenzhen) Co., Ltd. that are composed of solar cells Plaintiff designs,

develops, and tests at its facility in California.   Compl. ¶1; Def.'s Answer ¶1, Feb. 12,

2016; ECF No. 95 ("Answer"); ACE Inquiry # [[        ]] at 000244, CD 14, CBP AR 000244

(May 13, 2015) ("ACE Inquiry # [[        ]]"); see also Sunpreme Letter to CBP re:

Sunpreme at 000174–000175, 000181–000201, CD 12, CBP AR 000173–000236 (May

6, 2015).   Neither party disputes that the frameless double tempered-glass constructed

solar modules imported by Plaintiff are "bifacial solar modules made using its Hybrid Cell

Technology."   Compl. ¶¶10–11; Answer ¶¶10–11.

On December 7, 2012, the U.S. Department of Commerce ("Commerce")

published the Orders.  See CVD Order, 77 Fed. Reg. at 73,017; AD Order, 77 Fed. Reg.

at 73,018.  The scope language of the AD/CVD orders is identical.  It provides:

> The merchandise covered by this order is crystalline silicon
> photovoltaic cells, and modules, laminates, and panels, consisting of
> crystalline silicon photovoltaic cells, whether or not partially or fully
> assembled into other products, including, but not limited to, modules,
> laminates, panels and building integrated materials.
> This order covers crystalline silicon photovoltaic cells of thickness
> equal to or greater than 20 micrometers, having a p/n junction formed by
> any means, whether or not the cell has undergone other processing,
> including, but not limited to, cleaning, etching, coating, and/or addition of
> materials (including, but not limited to, metallization and conductor patterns)
> to collect and forward the electricity that is generated by the cell.
>
> . . .
>
> Excluded from the scope of this order are thin film photovoltaic
> products produced from amorphous silicon (a-Si), cadmium telluride
> (CdTe), or copper indium gallium selenide (CIGS).

CVD Order, 77 Fed. Reg. at 73,017; AD Order, 77 Fed. Reg. at 73,018.  On December

11, 2012 and December 21, 2012, Commerce issued liquidation instructions, which

incorporated the scope language common to the Orders, and instructed CBP to require

cash deposits equal to the rates in effect at the time of entry.  See Message No. 2346303

at 000011–000019, PD 2, CBP AR 000011–000019 (Dec. 11, 2012); Message No.

2356306 at 000020–000033, PD 3, CBP AR 000020–000033 (Dec. 21, 2012) (collectively

"Liquidation Instructions").

Neither party contests that, prior to April 20, 2015, Plaintiff was entering its

merchandise as entry type "01."  See CBP Notices of Action at 000001–000010; Request

for Information to Sunpreme Inc. at 000036–000037, CD 4, CBP AR 000034–000044

(Jan.8, 2015) ("Request for Information"); see also Pl.'s Mem. Supp. Mot. J. Agency R.

Confidential Version 1, 3, May 10, 2016, ECF No. 100 ("Sunpreme Br."); Def.'s Resp. Br.

4.  Before April 20, 2015, CBP was also not requiring Plaintiff to pay cash deposits or to

enter its merchandise as type "03.".  See Sunpreme Br. 1, 3; Def.'s Resp. Br. 4.

        In early 2015, CBP began to consider whether Plaintiff's entries matched the

description of merchandise covered by the Orders and the Liquidation Instructions by

requesting supporting documentation.[4]  See Request for Information at 000034.  Plaintiff

cooperated with CBP's request.[5]  Id. at 000035.  In March 2015, CBP examined a sample

of Plaintiff's modules from one of its shipments by sending that sample to a CBP

---

[4] CBP requested that Plaintiff provide [[

                    ]].  Request for Information at 000034.
[5] In response, Plaintiff indicated that [[
                                ]].  Request for Information at 000035.  Plaintiff indicated its solar cells are
[[                                                                        ]].  Id. at 000039.  In describing its
fabrication process, Plaintiff indicated that "[[
                                                                                                    ]]."
Plaintiff then referenced its patent, which it argued states that '[[
                                                                                                    ]].'"
Id.
        Plaintiff further explained that:
        [[




                                                    ]]
Id.

laboratory for analysis.[6]  See Laboratory Report No. SF20150252 at 000045, CD 5, CBP

AR 000045–000073 (Mar. 26, 2015) ("Laboratory Report No. SF20150252").   CBP's

laboratory confirmed the cells contain crystalline silicon.  Id.  On April 17, 2015, the same

laboratory issued a supplemental report further confirming the presence of crystalline

silicon in the sample.[7]  Supplemental Laboratory Report No. SF20150252S at 000076,

CD 8, CBP AR 000076–000093 (Apr. 17, 2015) ("Supplemental Laboratory Report No.

SF20150252S").[8]

On April 7, 2015, CBP [[



]].  See CBP Letter to Sunpreme, CD 6, CBP AR 000074 (Apr. 7,

2015); CBP Letter to Sunpreme, CD 7, CBP AR 000075 (Apr. 8, 2015).  Beginning on

April 20, 2015, CBP began sending Plaintiff Notices of Action requiring that it file those

entries as type "03" entries subject to AD/CVD duties and pay cash deposits in order for

---

[6] On March 26, 2015, CBP's laboratory found that a sample from entry # 32212346070 is a solar
panel consisting of "[[

]]."
Laboratory Report No. SF20150252 at 000045, CD 5, AR 000045–000073 (Mar. 26, 2015).
[7] CBP's laboratory specifically found that "[[

]]."  Supplemental Laboratory Report No.
SF20150252S at 000076, CD 8, CBP AR 000076–000093 (Apr. 17, 2015).
[8] Neither of these two initial CBP laboratory reports indicates CBP [[

]].
See Laboratory Report No. SF20150252 at 000045–000073; Supplemental Laboratory Report
No. SF20150252S at 000076–000093.
       E-mail communications between CBP's Electronics Center of Excellence and Expertise
("ECEE") and CBP's laboratory, which were annexed to Supplemental Laboratory Report No.
SF20150252S, indicated that ECEE [[

]].  Supplemental Laboratory Report No.
SF20150252S at 000092–000093.   No response to these inquiries was included with the
laboratory report filed with the administrative record.  See id.

its shipments to be released from the port warehouse.[9]   See CBP Notices of Action at

000001–000010.  As a result, the liquidation of Plaintiff's entries became suspended by

operation of law.[10]   In May 2015, Plaintiff submitted several letters to CBP's Electronics

Center for Excellence and Expertise ("ECEE") in Long Beach, California, arguing that its

products were not subject to the Orders.[11]   See Letter from Sunpreme re: Sunpreme, CD

---

[9] One effect of CBP requiring Plaintiff to file its entries as type "03" entries is to require Plaintiff to post cash deposits for its merchandise in order to withdraw the merchandise for consumption or risk exposing itself to penalties.  See Sections 484 and 592 of the Tariff Act of 1930, as amended, 19 U.S.C. §§ 1484, 1592 (2012); see also 19 C.F.R. § 144.38(d)–(e) (2015).

[10] Although liability to pay duties accrues upon entry of subject merchandise into "the Customs territory of the United States," see 19 C.F.R. § 141.1(a) (2015), because the United States employs a retrospective duty assessment system, the amount of actual liability may not be known for some time after entry occurs.  See Parkdale Int'l v. United States, 475 F.3d 1375, 1376–77 (Fed. Cir. 2007).  Commerce clarifies the implications of retroactivity in its regulations, explaining that under the system:

> final liability for antidumping and countervailing duties is determined after merchandise is imported.  Generally, the amount of duties to be assessed is determined in a review of the order covering a discrete period of time.  If a review is not requested, duties are assessed at the rate established in the completed review covering the most recent prior period or, if no review has been completed, the cash deposit rate applicable at the time merchandise was entered.

19 C.F.R. § 351.212(a) (2015).  When merchandise is imported, the importer deposits with CBP an amount equal to the prospective duties on each item being entered or withdrawn that the port director estimates will be owed when the entries of merchandise are "liquidated."  See 19 C.F.R. §§ 141.101, 141.103 (2015).  "Liquidation" is defined as "the final computation or ascertainment of duties on entries for consumption or drawback entries."  19 C.F.R. § 159.1 (2015).

Commerce's regulations provide that liquidation shall be suspended on merchandise entered or withdrawn from warehouse for consumption subject to AD/CVD orders on or after the date of publication of the notice of affirmative AD/CVD determination.  See 19 C.F.R. §§ 159.58(a)–(b) (2015).  This suspension of liquidation enables Commerce to calculate assessment rates for subject entries, see Section 751 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1675(a)(2) (2012), which are applied by Customs pursuant to liquidation instructions received from Commerce after completion of the administrative review.  See Section 751 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1675(a)(3)(B) (2012).

[11] Plaintiff argued that CBP's [[

]]"  Letter from Sunpreme re: Sunpreme Modules – Exclusion from the AD/CVD Orders

(footnote continued)

12, CBP AR 000173–000236 (May 6, 2015); Letter from Sunpreme re: Sunpreme

Retention Notices, CD 13, CBP AR 000237–000243 (May 12, 2015); Letter from

Sunpreme re: Sunpreme Modules – Exclusion from the AD/CVD Orders on *Crystalline*

*Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From China*, CD 15,

CBP AR 000245–000434 (May 14, 2015); Letter from Sunpreme re: Sunpreme, CD 16,

CBP 000435–000457 (May 19, 2015).

On June 3, 2015, CBP contacted Commerce seeking guidance on whether

Plaintiff's products are included within the scope of the Orders.  See ACE Inquiry #

[[        ]], CD 18, CBP AR 000479 (June 3, 2015) ("ACE Inquiry # [[        ]]").  Commerce

responded that "a determination as to whether this product is covered by antidumping

duty order A-570-979 and countervailing duty order C-570-980 would need to be made

by the Department of Commerce in a scope ruling which can be requested by the importer

or exporter."  Id.  Defendant avers that CBP "conveyed to Sunpreme verbally that, if

---

on *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From China*
at 000246, CD 15, CBP AR 000245–000434 (May 14, 2015).  Plaintiff further argued that its
        [[



                                                                                    ]]
Id.  Plaintiff's letter cited the U.S. International Trade Commission's ("ITC") definition of thin-film
products for its AD/CVD injury investigations, which it indicated provides that
        [[


                        ]]
Id. at 000255 (citations omitted).  Plaintiff contended that "[[
                                    ]]"  Id.  Finally, Plaintiff claimed that "[[

                                                            ]]"  Id. at 000256.

Sunpreme believed that its products were not covered by the scope description or were

described by the exclusionary language, it would need to seek a scope ruling from

Commerce." Def.'s Resp. Br. 7.

Thereafter, CBP continued to test and analyze samples of Plaintiff's imported

products.[12]  See Laboratory Report # LA20150736 at 000534–000535, CD 21, CBP AR

000534–000657 (Aug. 13, 2015); Laboratory Report # SF20151545 at 000658, CD 22,

CBP AR 000658-000700 (Sept. 30, 2015).   Plaintiff continued to submit additional

information to CBP, including its own independent laboratory testing, to assist CBP in its

further investigation.  See Letter from Sunpreme re: Sunpreme – Five-Step Production

---

[12] On August 13, 2015, another CBP laboratory issued a report confirming
    [[


    ]]
Laboratory Report # LA20150736 at 000534–000535, CD 21, CBP AR 000534–000657 (Aug. 13,
2015).  Following further laboratory testing, CBP found that
    [[


    ]]
Laboratory Report # SF20151545 at 000658, CD 22, CBP AR 000658-000700 (Sept. 30, 2015).

Process of Thin Film Cells and Characterization of the Solar Cell By Independent

Laboratory Testing, CD 19–20, CBP AR 000480–000533 (July 6, 2015).

On November 16, 2015, Plaintiff filed a request for a scope ruling with Commerce

under 19 C.F.R. § 351.225 (2012).[13]  Request for a Scope Ruling on Solar Modules with

Bi-Facial Thin Film Cells Public Version, PD 25, CBP AR 000767-000828 (Nov. 16, 2015).

On December 30, 2015, Commerce initiated a formal scope inquiry pursuant to 19 C.F.R.

§ 351.225(e).  See Letter from Plaintiff Notifying the Court of Scope Decision Att. at 2,

Aug. 5, 2016, ECF No. 109 ("Final Scope Determination").  On July 29, 2016, Commerce

issued its final determination concluding that Plaintiff's products fall within the scope of

the Orders.  Final Scope Determination at 18.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction over Plaintiff's claim under 28 U.S.C. § 1581(i)(2) and

(i)(4).[14]  The court reviews an action brought under 28 U.S.C. § 1581(i) under the same

---

[13] Further citations to the Code of Federal Regulations are to the 2015 edition.

[14] On December 17, 2015, Defendant moved to dismiss Plaintiff's cause of action, arguing that:
(1) Plaintiff may not invoke the Court's residual jurisdiction because it could challenge CBP's
determination under 28 U.S.C. § 1581(a) (2012) or by the U.S. Department of Commerce under
28 U.S.C. § 1581(c); and (2) in the alternative, that Plaintiff failed to state a claim upon which
relief can be granted.  See Mot. Dismiss 8–25, Dec. 18, 2015, ECF No. 40.  After full briefing by
the parties, the court denied Defendant's motion to dismiss because Plaintiff demonstrated judicial
review under either 28 U.S.C. § 1581(a) or 28 U.S.C. § 1581(c) was unavailable and Plaintiff has
identified final agency action subject to challenge that is reviewable under the Administrative
Procedure Act, as amended, 5 U.S.C. § 704 (2012).  See Sunpreme, 40 CIT at __, 145 F. Supp.
3d at 1283–1294.

   Defendant-Intervenor argues that the court's decision is in tension with Sandvik Steel Co.
v. United States, 164 F.3d 596 (Fed. Cir. 1998).  SolarWorld Resp. Br. 11–12, 11 n. 5 (citing
Sandvik Steel Co. v. United States, 164 F.3d 596, 599–602 (Fed. Cir. 1998)). Defendant-
Intervenor contends that, in Sandvik, CBP interpreted the antidumping orders at issue yet the

(footnote continued)

standards as provided under § 706 of the Administrative Procedure Act ("APA"), as

amended.[15]  See 28 U.S.C. § 2640(e) (2012).  Under the statute,

> [t]he reviewing court shall--
>
> (1) compel agency action unlawfully withheld or unreasonably delayed; and
> (2) hold unlawful and set aside agency action, findings and conclusions found to be--
>
> > (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . [or]
> > (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

---

Court of Appeals for the Federal Circuit did not perceive CBP as having acted ultra vires.  Id. (citing Sandvik Steel Co. v. United States, 164 F.3d 596, 599–602 (Fed. Cir. 1998)).

Sandvik is inapposite, and Defendant-Intervenor's reading misstates the holding.  In the two cases that were consolidated in Sandvik, CBP concluded based upon the plain language that plaintiff's goods fell within the scope of the antidumping order.  See Sandvik, 164 F.3d at 598.  In each case, the importer had forgone a scope ruling, waited for the goods to liquidate and then protested the liquidation.  Id.  The Court of Appeals for the Federal Circuit held that an importer cannot challenge the applicability of antidumping duty orders by challenging CBP's denial of a protest under 19 U.S.C. § 1581(a).  Id. at 601–2.  The Court of Appeals held to bring a suit challenging the applicability of antidumping duty orders to a party's imports  the party must seek a scope determination from Commerce, which can be reviewed in under 19 U.S.C. § 1581(c).  See id. at 602.  In Sunpreme, the court held CBP failed to give effect to all of the scope language and could not have found Plaintiff's products fell within the scope, including exclusions, without engaging in an interpretive act.  Sunpreme, 40 CIT at __, 145 F. Supp. 3d at 1286.

Defendant-Intervenor also argues that, in Xerox Corp. v. United States, 289 F.3d 792 (Fed. Cir. 2002), the Court of Appeals for the Federal Circuit left room for CBP to interpret an antidumping order while still acting within its ministerial role.  SolarWorld Br. 13 (citing Xerox Corp. v. United States, 289 F.3d 792, 795 (Fed. Cir. 2002)).  SolarWorld misconstrues the holding in Xerox as implying that CBP does not act ultra vires by interpreting an antidumping order.  Id. at 12–13 (citing Xerox, 289 F.3d at 795).  In Xerox, the Court of Appeals held that the scope of the antidumping duty order unambiguously did not cover plaintiff's merchandise, but CBP made a factual error in finding the merchandise subject to the antidumping order.  Xerox, 289 F.3d at 795.  Therefore, the court held that the misapplication of an unambiguous antidumping order, as opposed to the erroneous interpretation of an ambiguous order, is a protestable decision under 19 U.S.C. § 1514(a)(2).  Id.  Nothing in Xerox implies, as SolarWorld suggests, that CBP acts within its authority where it interprets an ambiguous antidumping order.

[15] Further references to the Administrative Procedure Act, as amended, are to the relevant provisions of Title 5 of the United States Code, 2012 edition.

5 U.S.C. § 706(2)(A), (C).   Under the arbitrary and capricious standard, courts consider

whether the agency "'entirely failed to consider an important aspect of the problem,

offered an explanation for its decision that runs counter to the evidence before the agency,

or [the decision] is so implausible that it could not be ascribed to a difference in view or

the product of agency expertise.'"   Alabama Aircraft Indus., Inc. v. United States, 586 F.3d

1372, 1376 (Fed. Cir. 2009) (quoting Motor Vehicle Ass'n v. State Farm Mut. Auto. Ins.

Co., 463 U.S. 29, 43 (1983)).

## DISCUSSION

### I.   CBP Acted Beyond the Scope of Its Authority

Plaintiff contends that CBP acted contrary to law because it interpreted ambiguous

scope language in the Orders to decide that Plaintiff's merchandise fell within the scope

of the Orders.   Sunpreme Br. 14.   Defendant counters that CBP preliminarily determined,

based solely upon its review and testing of the merchandise, that Sunpreme's products

possess the physical characteristics of the merchandise described by the plain language

of the Orders.[16]   Def.'s Resp. Br. 13.   The Orders exclude "thin film photovoltaic products."

---

[16] Defendant repeatedly characterizes CBP's determination as preliminary.   Def.'s Resp. Br. 1, 2, 8, 10, 11, 13, 22, 23.   For purposes of the court's review under 5 U.S.C. § 706 (2012), CBP's action is a final agency action.   Agency action is final where it is neither tentative nor interlocutory and marks the consummation of the agency's process and where as a result "'legal consequences will flow.'"   Bennett v. Spear, 520 U.S. 154, 177–78 (1997) (citations omitted).

   As the court previously held in deciding Defendant's motion to dismiss, CBP has limited decision-making responsibilities in order to administer AD/CVD Orders.   Sunpreme, 40 CIT at __, 145 F. Supp. 3d 1292.   Congress has charged CBP only with deciding whether the language of the Orders, as explained in Commerce's instructions, includes merchandise with the characteristics implicated by the plain language of the Orders.   See Xerox Corp. v. United States, 289 F.3d 792, 794–95 (Fed. Cir. 2002).   CBP's decision to require Plaintiff to enter its goods as subject to the Orders or otherwise be denied entry left nothing for CBP to decide to administer

(footnote continued)

See CVD Order, 77 Fed. Reg. at 73,017; AD Order, 77 Fed. Reg. at 73,018.  Nothing in the common sense meaning of the exclusionary language suggests that it is meant to cover certain thin film products.  See CVD Order, 77 Fed. Reg. at 73,017; AD Order, 77 Fed. Reg. at 73,018.  Defendant does not contest the presence of a thin film of amorphous silicon in Plaintiff's products.  Def.'s Resp. Br. 13.  CBP could not place the goods within the scope of the Orders without interpreting the Orders to exclude certain photovoltaic products with thin films of amorphous silicon.  Therefore, CBP acted in excess of its authority by requiring Plaintiff to enter its goods as subject to the Orders.

Only Commerce has the power to interpret antidumping and countervailing duty orders.  See Duferco Steel, Inc. v. United States, 296 F.3d 1087, 1096—97 (Fed. Cir. 2002); Xerox Corp. v. United States, 289 F.3d 792, 794–95 (Fed. Cir. 2002) (discussing Sandvik Steel Co. v. United States, 164 F.3d 596, 600 (Fed. Cir. 1998)); see also Section 516A of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(2)(B)(vi);[17] 19 U.S.C. § 1677(25); 19 C.F.R. § 351.225.  Congress made clarifications of the scope of an AD/CVD order by Commerce reviewable.[18]  See 19 U.S.C. § 1516a(2)(B)(vi); 19 U.S.C.

---

the orders.  In addition, discernible consequences flowed from CBP's determination for Plaintiff.  CBP cannot evade review of a determination from which legal consequences flow for Plaintiff while subjecting Plaintiff to cash deposit requirements during its investigative process.  If CBP's investigation of the nature of the merchandise is ongoing, then CBP has yet to determine that the merchandise possesses the physical characteristics of merchandise covered by the Orders.  If CBP has not determined that the goods possess the physical characteristics of subject merchandise, then CBP lacks authority to require cash deposits.  See Xerox, 289 F.3d at 794–95; see also 19 C.F.R. § 144.38(d)–(e).

[17] Further citations to the Tariff Act of 1930, as amended, are to the relevant provision of the U.S. Code, 2012 edition.

[18] Congress has empowered Commerce to provide the scope of antidumping and countervailing duty orders.  See 19 U.S.C. § 1516a(2)(B)(vi); 19 U.S.C. § 1677(25).  "The 1979 Act transferred

(footnote continued)

§ 1677(25).   Therefore, if there is a question as to the meaning of the language of an

AD/CVD order, it is for Commerce to answer that question.

CBP, incident to its function of fixing the amount of duties chargeable, must make

factual findings to determine "what the merchandise is, and whether it is described in an

order."  See Xerox, 289 F.3d at 794.  CBP has no authority to modify the scope of the

Orders.  Cf. Mitsubishi Elecs. Am., Inc. v. United States, 44 F.3d 973, 977 (Fed. Cir. 1994)

(CBP follows Commerce's instructions in assessing and collecting duties, and its "merely

ministerial role in liquidating antidumping duties" does not allow it to modify Commerce's

determinations, their underlying facts, or their enforcement).  CBP's role is relegated to

implementing Commerce's instructions.  Cf. Mitsubishi, 44 F.3d at 977, Koyo Corp. of

U.S.A. v. United States, 497 F.3d 1231, 1242 (Fed. Cir. 2007).

CBP's laboratory testing indicated the presence of thin films in Plaintiff's

merchandise.  See Laboratory Report # LA20150736 at 000534–000535, CD 21, CBP

AR 000534–000657; Laboratory Report # SF20151545 at 000658, CD 22, CBP AR

000658-000700 (Sept. 30, 2015).  Plaintiff brought the potential applicability of the thin

film exclusion to the attention of CBP on September 19, 2014 in its response to CBP's

request for information.  See Request for Information at 000039.

---

the administration of the antidumping laws from the United States Treasury Department to
Commerce."  J.S. Stone, Inc. v. United States, 27 CIT 1688, 1691 (2003) aff'd, 111 F. App'x 611
(Fed. Cir. 2004) (citing Comm. To Preserve Am. Color Television v. United States, 706 F.2d 1574,
1577 (Fed.Cir.1983); Reorg. Plan No. 3 of 1979, § 5(a)(1)(c), 44 Fed. Reg. 69,273, 69,275 (Dec.
3, 1979)).  Commerce has also been given the power to interpret and clarify those orders.  See
Duferco Steel, Inc. v. United States, 296 F.3d 1087, 1096—97 (Fed. Cir. 2002).  Commerce
instructs CBP to carry out those orders.  Mitsubishi Elecs. Am., Inc. v. United States, 44 F.3d 973,
977 (Fed. Cir. 1994).

CBP determined that Plaintiff's merchandise was included in the scope of the Orders by interpreting the exclusion to apply only to certain photovoltaic products with thin films produced from amorphous silicon.  The scope language does not define the term thin film products.[19]  See CVD Order, 77 Fed. Reg. 73,017, AD Order, 77 Fed. Reg. 73,018.  Defendant does not contest the presence of a thin film of amorphous silicon in Plaintiff's products.  Def.'s Resp. Br. 13.  Thus, CBP cannot have given effect to the exclusion without concluding that the Orders are meant to include at least some photovoltaic cells with thin films produced from amorphous silicon.  Any such interpretation must be set aside under 5 U.S.C. § 706(2)(C) as contrary to law.[20]

---

[19] Defendant-Intervenors argue that CBP's finding that Plaintiff's merchandise is subject to the Orders is wholly supported by Commerce's final ruling in the scope proceeding.  SolarWorld Br. 20–21.  First, whether or not CBP interpreted the language of the Orders correctly does not excuse the fact that CBP lacks the authority to interpret the Orders.  Cf. Mitsubishi, 44 F.3d at 977. Second, although Defendant-Intervenors imply that Commerce interpreted the exclusion to mean that the presence of thin film layers is insufficient to make photovoltaic cells thin film products in prior scope determinations, see id. (citing SolarWorld Br. Att 1 ("Triex Scope Ruling")), that interpretation by Commerce occurred well after CBP's determination on June 17, 2016.  See Triex Scope Ruling at 1.  Therefore, CBP cannot have relied upon Commerce's determination to support the inapplicability of the exclusion for thin film products produced from amorphous silicon to Plaintiff's products.

[20] Defendant argues that CBP had good reason to conclude that Plaintiff's products exhibited physical characteristics that are described by the Orders because CBP sought clarification from Commerce on the meaning of the scope language and followed Commerce's advice.  Def.'s Resp. Br. 15 (citing ACE Inquiry # [[          ]]).  As an initial matter, CBP made its determination to begin requiring Plaintiff to file its entries as type "03" entries more than seven weeks prior to these communications with Commerce.  See Notices of Action at 00001; ACE Inquiry # [[          ]].  Moreover, Commerce's guidance to CBP did not indicate that Plaintiff's product is covered by the Orders.  See ACE Inquiry # [[          ]].  Commerce advised CBP that "a determination as to whether this product is covered by [the Orders] would need to be made by the Department of Commerce in a scope ruling which can be requested by the importer or exporter."  Id.  CBP cannot have given effect to the exclusionary language in the orders without interpreting the Orders to cover only certain thin film products, which is not indicated by the common import of the plain terms of the exclusion.  See CVD Order, 77 Fed. Reg. 73,017, AD Order, 77 Fed. Reg. 73,018.

In order to act within its designated role, CBP must be able to point to clear language in the scope of the Orders, including any exclusions, that places goods within the scope based upon observable facts.  See Xerox, 289 F.3d at 794–95.  Where factual determinations alone do not permit CBP to determine that a good falls within exclusionary language in an order, the good must be considered outside of the scope until Commerce interprets the order and clarifies that the merchandise should be included.[21]  See id. (to protect Commerce's administrative authority, Customs should not decide whether an antidumping order covers particular products in the first instance).

Defendant argues that "CBP's preliminary determination to apply the Orders to Sunpreme's merchandise was based on the fact that the merchandise possessed the physical characteristics that are described by the plain terms of the scope of the order, notwithstanding the presence of the thin film."  Def.'s Resp. Br. 13.  Defendant contends that the presence of a layer of amorphous silicon does not

> necessarily preclude the application of the orders because the description
> clearly states that crystalline photovoltaic cells are included whether or not
> the cell "has undergone other processing, . . . and/or the addition of

---

[21] Commerce's regulations do not permit it to impose antidumping cash deposits where the scope of an AD/CVD order is ambiguous until Commerce has acted to resolve that ambiguity.  See 19 C.F.R. § 351.225(l)(1)(3); AMS Assocs., Inc. v. United States, 737 F.3d 1338, 1344 (Fed. Cir. 2013) (holding that where Commerce clarifies the scope of an existing AD duty order that has an unclear scope, Commerce may not act on a retrospective basis to impose cash deposits before Commerce has resolved that ambiguity).  In its scope determination, Commerce determined that "the mere existence of thin film in a solar module does not constitute an excluded thin film product."  Scope Determination at 17.  Commerce further relied upon the petitions under 19 C.F.R. § 351.225(k)(1) to find that "thin film products do not use crystalline silicon."  Id.  Commerce therefore interpreted the term "thin film products" not to include products having an amorphous silicon thin film element in a product containing a doped (i.e., active) silicon wafer.  Id.  Commerce attached greater significance to the crystalline silicon component of Sunpreme's cells over the thin film component.  Id.  Without discussing the reasonableness of Commerce's determination, nothing in the common import of the language of the Orders attaches any such meaning to the term "thin film products."

materials . . . to collect and forward the electricity that is generated by the cell."

Def.'s Resp. Br. 13–14 (quoting Message No. 2346303 at 000012, CD 2, CBP AR 000011–000019 (Dec. 11, 2012); Message No. 2356306 at 000021, CD 3, CBP AR 000020–000033 (Dec. 21, 2012)).  However, Defendant's attempt to characterize the thin films in Plaintiff's product as "an addition of materials . . . to collect and forward the electricity that is generated by the cell" is misplaced.  Even if the layers of amorphous silicon identified were additional materials used to "collect and forward the electricity that is generated by" Plaintiff's cell, thin film photovoltaic products produced from amorphous silicon are nonetheless excluded by the scope language.  See CVD Order, 77 Fed. Reg. 73,017, AD Order, 77 Fed. Reg. 73,018.  In order to conclude that the thin films in Plaintiff's merchandise were not thin film products, CBP had to act beyond its authority by interpreting the term "thin film products."  Commerce must clarify whether the words of the Orders reach these products.  See Duferco, 296 F.3d at 1096—97.

Defendant also argues that CBP may act to protect the revenue of the United States and collect cash deposits until all ambiguities in the Orders are resolved.  Def.'s Resp. Br. 17–18.  The court disagrees.  As the court observed in Sunpreme, "CBP cannot interpret ambiguous words to place goods within the scope of an antidumping or countervailing duty order."[22]  Sunpreme, 40 CIT at __, 145 F. Supp. at 1289.  At the point

---

[22] The court explained that several points support this reading of antidumping and countervailing duty regime:

First, the statutory scheme supports this view.  After Commerce and the ITC make the requisite affirmative dumping and injury findings, Commerce "shall

(footnote continued)

CBP realized the exclusionary language of the Orders would on its face exclude Plaintiff's

goods, it could not place the goods within the scope of the Orders until Commerce clarified

---

issue an antidumping duty order under section 1673e(a) of this title." 19 U.S.C.
§ 1673d(c)(2).    Commerce is charged with writing the antidumping or
countervailing duty order to include "a description of the subject merchandise, in
such detail as the administering authority deems necessary."    19 U.S.C.
§ 1673d(c)(2).  If Commerce writes the words in an antidumping or countervailing
duty order in such general terms such that CBP is unable to determine whether
goods are included or excluded from the scope on the basis of clear facts
implicated by the plain language of the Orders, then it is up to Commerce to clarify
the meaning of its scope language. Cf. 19 C.F.R. § 351.225(a) (stating that issues
will arise "because the descriptions of subject merchandise . . . must be written in
general terms" and noting that when such issues arise "the Department issues
'scope rulings' that clarify the scope of an order or suspended investigation with
respect to particular products."). Given Commerce's role in crafting the scope
language and in scope determinations, see 19 U.S.C. §1673d(c)(2); 19 C.F.R.
§ 351.225, where the language contained in the Orders is insufficient to permit
CBP to determine if goods are in or out of the Orders based upon factual
determinations alone, CBP cannot interpret goods as falling within the scope of the
Orders until Commerce says they do.

     Second, . . . Commerce's regulations charge it with the responsibility of
interpreting ambiguous scope language when a question arises as to whether a
particular product is included within the scope of an antidumping or countervailing
duty order.  See 19 C.F.R. § 351.225(a). Likewise, since the regulations permit
Commerce to act quickly to interpret the scope, see id. at §§ 351.225(d), (k)(1), it
stands to reason that goods should only be considered to fall within the scope of
antidumping and countervailing duty orders once the agency with the capacity to
interpret them has done so.

     Finally, this principle is entirely consistent with the controlling precedent of
the Court of Appeals for the Federal Circuit. . . . in [AMS Assocs., Inc. v. United
States, 737 F.3d 1338, 1344 (Fed. Cir. 2013)], the Court of Appeals for the Federal
Circuit held that where there was ambiguous scope language, Commerce can only
suspend liquidation and impose cash deposits prospectively after the initiation of
a formal scope ruling.  See [AMS Assocs., Inc. v. United States, 737 F.3d 1338,
1344 (Fed. Cir. 2013)].   Both Commerce and the Government, however, are
protected from unmeritorious claims that scope language is ambiguous because
Commerce may, where it considers scope language unambiguous, avoid initiating
a formal scope ruling under 19 C.F.R. § 351.225(d).  See id. ("[i]mporters cannot
circumvent antidumping orders by contending that their products are outside the
scope of existing orders when such orders are clear as to their scope"). Commerce
need not "initiate a formal scope inquiry when the meaning and scope of an existing
antidumping order is clear." Id. (citing Huayin Foreign Trade Corp (30) v. United
States, 322 F.3d 1369, 1378–79 (Fed. Cir. 2003)).

Sunpreme, 40 CIT at __, 145 F. Supp. 2d at 1289.

the Orders.  Only Commerce may clarify and interpret its antidumping and countervailing

orders.  See Duferco, 296 F.3d at 1096—97; Xerox, 289 F.3d at 794; Koyo, 497 F.3d at

1241–42.  Defendant's position would render CBP's ultra vires interpretation of the scope

language unreviewable.  See Sunpreme, 40 CIT at __, 145 F. Supp. 3d at 1286.  It would

also allow CBP to subject Plaintiff's entries to cash deposits before Commerce may do

so.[23]  See AMS Assocs., Inc. v. United States, 737 F.3d 1338, 1344 (Fed. Cir. 2013).  It

is inconceivable that the regulatory scheme would permit CBP, which should defer to

Commerce to determine the scope in the first instance and which is charged with

implementing Commerce's instructions, to suspend liquidation and collect cash deposits

prior to a scope determination when Commerce itself cannot do so.

Defendant also argues that, where the scope of an AD/CVD order is unclear, the

importer has the burden to seek clarification on the scope of the Orders to determine

whether its products may be excluded.  Def.'s Resp. Br. 18–22.  Defendant grounds this

assignment of responsibility in an importer's statutory obligation to use reasonable care

in providing information necessary to enable CBP to properly assess duties on the

---

[23] When a question over whether a particular product is included within the scope of an antidumping or countervailing duty order arises, Commerce "issues 'scope rulings' that clarify the scope of an order or suspended investigation with respect to particular products."  19 C.F.R. § 351.225(a).  If Commerce cannot determine that a product falls within the scope language of antidumping or countervailing duty orders "based solely upon the application," under 19 C.F.R. § 351.225(d), Commerce will proceed with a formal scope inquiry, see 19 C.F.R. §§ 351.225(e).

Where Commerce initiates a formal scope inquiry, as it has did here, see Final Scope Determination at 5, Commerce will not suspend liquidation or order the collection of cash deposits until Commerce issues a preliminary or final scope ruling, whichever occurs earlier, that the antidumping or countervailing duty order includes the goods.  See 19 C.F.R. § 351.225(l)(2); id. at § 351.225(l)(3); AMS Assocs., Inc. v. United States, 737 F.3d 1338, 1344 (Fed. Cir. 2013) (holding that under 19 C.F.R. § 351.225(l)(2), where Commerce clarifies existing scope language that is unclear, the imposition of cash deposits can only take effect on or after the initiation of the scope inquiry).

merchandise, collect accurate statistics with respect to the merchandise, and determine whether any other requirement of law is met.  See Def.'s Resp. Br. 19 (citing 19 U.S.C. § 1484(a)(1)).  Nothing in the statute provides that importers must seek clarification where the language of the order prima facie excludes their products.  See 19 U.S.C. § 1484. Moreover, Commerce's regulations allow any interested party to apply for a scope ruling. 19 C.F.R. § 351.225(c)(1).  Commerce's advice to CBP recognized this fact when it advised CBP that "a determination as to whether this product is covered by antidumping duty order A-570-979 and countervailing duty order C-570-980 would need to be made by the Department of Commerce in a scope ruling which can be requested by the importer or exporter."  ACE Inquiry # [[          ]].

Defendant also grounds its assignment of responsibility to an importer to seek clarification of any scope language ambiguity in Sandvik and Xerox.  See Def.'s Resp. Br. 21 (citing Sandvik, 164 F.3d at 598–600; Xerox, 289 F.3d at 795).  Neither case holds that an importer must seek clarification where the language of the order prima facie excludes their products.  In Xerox, the Court of Appeals for the Federal Circuit held that a scope determination by Commerce was unnecessary because plaintiff's merchandise was facially outside the scope of the antidumping order.  Xerox, 289 F.3d. at 795.  It follows from the holding in Xerox that, where factual determinations alone do not permit CBP to determine whether a good is within the scope or outside the scope of the Orders, goods must be considered outside of the scope until Commerce clarifies or interprets the Orders.  Cf. Xerox, 289 F.3d at 795.  Where, as here, CBP lacks authority to determine

goods to be subject to an order, it follows that the domestic party, not the importer, would

have a greater interest in seeking a scope ruling.

Sandvik is inapposite.   In Sandvik, plaintiffs failed to challenge CBP's

determination that its goods were subject to antidumping orders until after liquidation.

Sandvik, 164 F.3d at 598.   The question confronted by the Court of Appeals for the

Federal Circuit was whether this Court had jurisdiction under 28 U.S.C. § 1581(a) to

review CBP's decision to include the merchandise in the scope of the antidumping order

where the plaintiffs failed to seek timely scope determinations.  Sandvik, 164 F.3d at 601.

In Sandvik, the Court of Appeals in fact affirmed that it is Commerce that makes scope

determinations, and the mechanism to review those determinations is an action under 28

U.S.C. § 1581(c).  See id.  In Sandvik, the court's holding did not assign responsibility to

an importer to seek a scope ruling where the language of the order prima facie excludes

their products.  In fact, in Xerox, the Court of Appeals for the Federal Circuit clarified its

holding in Sandvik.  See Xerox, 289 F.3d at 795.  In Xerox, the Court of Appeals held that

Customs should not make a determination as to whether goods are covered in the first

instance where the common import of the scope language does not permit CBP to place

the goods within the scope based upon observable physical characteristics of the

products.  See id. (discussing Sandvik, 164 F.3d 600).  It follows that, where CBP cannot

place goods within the plain terms of an order, Commerce must interpret the ambiguous

terms before CBP can demand cash deposits.

Defendant believes the court's standard leaves it unclear when CBP can determine

goods are in scope where an interested party contends there is ambiguity in an AD/CVD

order.  Here, the Orders contained an exclusion for thin film photovoltaic products.

Defendant does not deny the exclusion exists, and CBP did not point to observable

physical characteristics of Plaintiff's products that rendered them outside the scope of the

exclusionary language.  CBP's determination that Plaintiff's merchandise were not thin

film photovoltaic products was therefore the result of an interpretation that thin film

photovoltaic products are not equivalent to photovoltaic products with thin films.

Defendant points to no language in the statute or in the regulations that militates a

different outcome.  None of the policy issues raised by Defendant is convincing.

Defendant and Defendant-Intervenor oversimplify the court's holding in <u>Sunpreme</u>,

implying that any conceivable ambiguity identified by an importer would prevent CBP from

collecting cash deposits on its merchandise.[24]  <u>See</u> Def.'s Resp. Br. 23; SolarWorld Br.

16.  Where merchandise is prima facie covered by both the inclusive and exclusive words

of the order, CBP may suspend liquidation and collect cash deposits even in a case where

an importer claims there is ambiguity in an order.  In this case, even if the merchandise

was prima facie a crystalline silicon photovoltaic cell, it also had thin films.  <u>See</u> Laboratory

Report # LA20150736 at 000534–000535, CD 21, CBP AR 000534–000657.  Without a

definition of the term "thin film products," CBP could not have given effect to the

exclusionary language without concluding some products with thin films were not thin film

---

[24] On a related note, Defendant and Defendant-Intervenor also raise concerns that removing CBP's ability to collect cash deposits and giving an importer an avenue to challenge CBP's determinations under 28 U.S.C. § 1581(i) would give the importer no incentive to seek a scope ruling to resolve ambiguities in scope language and would stand to encourage importers to delay or forgo scope rulings.  <u>See</u> Def.'s Resp. Br. 23; SolarWorld Br. 16–17.

products.  It is this interpretation of the exclusion, not its prima facie meaning, that allowed

CBP to conclude Plaintiff's merchandise fell outside of the exclusion.

Defendant worries that this standard would leave certain scope issues unresolved

because "CBP does not have the regulatory ability or statutory burden to seek a scope

ruling from Commerce when it is presented with issues involving the scope of an order."

Def.'s Resp. Br. 24.  Yet, nothing prevents CBP from bringing scope issues to the

attention of Commerce, which can self-initiate a scope inquiry.  <u>See</u> 19 C.F.R.

§ 351.225(b).  Moreover, Commerce's regulations permit it to act quickly to determine

that a product falls within the scope of an order based solely upon the application or based

on the (k)(1) factors where the ambiguity in scope language may be easily resolved.  <u>See</u>

19 C.F.R. § 351.225(d).[25]

Defendant-Intervenor argues domestic interested parties are not in a position to

police importers' attempts to skirt the otherwise proper application of orders by relying

upon subjective ambiguities.  SolarWorld Br. 16.  Therefore, Defendant-Intervenor

believes that CBP should have the power to err on the side of protecting revenue by

placing merchandise within the scope of the order.  <u>Id.</u>  The burden, and the incentive, to

seek a scope ruling would then shift to the importer.  <u>See id.</u>  Yet, any interested party

and Commerce itself, may request a scope ruling.  <u>See</u> 19 C.F.R. §§ 351.225(b), (c).

Defendant and Defendant-Intervenor point to nothing in the statute or in Commerce's

---

[25] Finally, if the scope regime as set forth in the statute and the regulations is less than ideal, then it is for Congress or the agencies to remedy those shortcomings.  It is not for the court to speculate on a mechanism for the agencies to resolve such shortcomings.  The court reviews the statutory and regulatory framework as it exists.

regulations regarding scope rulings that indicates the burden must always fall on importers.   Moreover, in this case the prima facie language excludes Plaintiff's merchandise, and therefore the burden should not fall upon the importer to clarify the Orders.

Defendant contends that deciding whether scope language is ambiguous is subjective.  Def.'s Resp. Br. 24.  Admittedly, parties can always make a subjective claim that the language is ambiguous, but doing so does not make unambiguous language ambiguous.  More importantly, the scope language here did not contain a mere ambiguity. It contained exclusionary language that prima facie excluded thin film photovoltaic products.   Although it is possible that this term could have been clarified to include Plaintiff's goods, it is Commerce's job to clarify, not CBP's.   Commerce's regulations specifically provide for Commerce to clarify the meaning of scope language without initiating a "formal scope inquiry when the meaning and scope of an existing antidumping order is clear."  See 19 C.F.R. § 351.225(d); see also AMS Assocs., 737 F.3d at 1344 (citing Huayin Foreign Trade Corp (30) v. United States, 322 F.3d 1369, 1378–79 (Fed. Cir. 2003)).  Where CBP can match physical characteristics of the merchandise with the common import of the language of an order, CBP may act within its authority to collect cash deposits.  See Xerox, 289 F.3d at 795.  Where CBP cannot, Commerce must resolve the ambiguity before CBP can collect cash deposits.  See Xerox, 289 F.3d at 795; cf. Mitsubishi, 44 F.3d at 977.

Defendant argues that if the scope is ambiguous, it is equally unclear whether imported merchandise is in scope or out of scope.  Def.'s Resp. Br. 25.  Defendant

contends that, by allowing merchandise to enter as type "01" where the scope language

is ambiguous, CBP would implicitly be concluding that merchandise is not covered by an

order.  Defendant's argument is contradicted by the statutory scheme.  The court stated

in Sunpreme:

> Commerce is charged with writing the antidumping or countervailing
> duty order to include "a description of the subject merchandise, in such
> detail as the administering authority deems necessary."   19 U.S.C.
> § 1673d(c)(2).   If Commerce writes the words in an antidumping or
> countervailing duty order in such general terms such that CBP is unable to
> determine whether goods are included or excluded from the scope on the
> basis of clear facts implicated by the plain language of the Orders, then it is
> up to Commerce to clarify the meaning of its scope language. Cf. 19 C.F.R.
> § 351.225(a) (stating that issues will arise "because the descriptions of
> subject merchandise . . . must be written in general terms" and noting that
> when such issues arise "the Department issues 'scope rulings' that clarify
> the scope of an order or suspended investigation with respect to particular
> products.")

Sunpreme, 40 CIT at __, 145 F. Supp. 3d at 1288.  Therefore, merchandise only comes

within the scope of an order when Commerce, either in the language of the order or in a

subsequent scope ruling interpreting ambiguous language, says the merchandise comes

within the scope of an order.

Defendant implies that Plaintiff, in filing its action under 28 U.S.C. § 1581(i),

effectively seeks a preemptive review of Commerce's scope determination before

Commerce acted.[26]  See Def.'s Resp. Br. 25.  Defendant's objection misses the mark.

---

[26] On a related note, Defendant-Intervenor argues that the court's holding would lead to a
significant increase in litigation under 28 U.S.C. § 1581(i).  SolarWorld Br. 17 n.10.  As an initial
matter, the court believes this assessment depends upon Defendant-Intervenor's
oversimplification of the court's holding here.  Where merchandise is prima facie covered by an
order, and not excluded by the plain meaning of any exclusionary language, CBP may suspend

(footnote continued)

The court has not reviewed Commerce's interpretation of the scope language, but rather CBP's determination to begin collecting cash deposits.  As already discussed, CBP's determination as to whether Plaintiff's merchandise is subject to the Orders was final, and thus reviewable under 5 U.S.C. § 706, when it required Plaintiff to post cash deposits.

On a related note, Defendant argues that CBP could not know whether it is acting beyond the scope of its authority until Commerce decides to initiate a scope inquiry.  See Def.'s Resp. Br. 25.  However, where CBP can conclude that a product falls within the words of the order, both the affirmative scope language and any exclusions, CBP properly requires an importer to enter its goods as subject to an order.  See Xerox, 289 F.3d at 794–95.  In such a case, the burden falls upon the importer to show that the language requires clarification to properly reflect the scope of the orders.  The language of an order either clearly instructs CBP or it does not.  Whether it does so comes down to whether CBP can determine that merchandise falls within the common meaning of the scope language based upon observable physical characteristics.

---

liquidation and collect cash deposits even in a case where an importer claims there is ambiguity in an order.  Under such circumstances, an importer would have no available avenue for review under § 1581(i).  Moreover, Defendant-Intervenor's conception of the regulatory regime would effectively deny importers an avenue to review any interpretation of scope language by CBP, no matter how wrong-headed, and subject the importer to cash deposits while the matter is adjudicated.  That would also permit CBP to subject imports to cash deposits under scope language before Commerce may do so.  See 19 C.F.R. § 351.225(l)(3); AMS Assocs., Inc. v. United States, 737 F.3d 1338, 1344 (Fed. Cir. 2013) (holding that under 19 C.F.R. § 351.225(l)(2), where Commerce clarifies existing scope language that is unclear, the imposition of cash deposits can only take effect on or after the initiation of the scope inquiry).

### II. CBP Lacked Authority to Suspend Liquidation and Order the Collection of Cash Deposits Prior to Commerce's Initiation of a Scope Inquiry

Plaintiff argues that CBP lacked authority to suspend liquidation and order the collection of its cash deposits prior to the initiation of a scope inquiry by Commerce. Sunpreme Br. 16–17 (citing <u>AMS Assocs.</u>, 737 F.3d at 1344). Specifically, Plaintiff argues Commerce's regulation prevents suspension of liquidation and collection of cash deposits prior to the initiation of a scope inquiry where CBP must interpret ambiguous scope language to determine a product falls within the scope. Sunpreme Br. 16–17 (citing <u>AMS Assocs.</u>, 737 F.3d at 1344). Defendant argues that, when entries are already suspended, "Commerce has the authority to order that suspension continue, regardless of when the scope inquiry was initiated." Def.'s Resp. Br. 27 (citing 19 C.F.R. §§ 351.225(l)(1), (3)). The court concludes that CBP acted in excess of its authority in suspending liquidation on Plaintiff's entries prior to initiation of Commerce's scope inquiry. Commerce's regulations must presume suspension of liquidation is lawful. <u>See</u> 19 C.F.R. §§ 351.225(l)(1), (3). Commerce's regulation cannot reasonably be read to permit an ultra vires suspension of liquidation to continue.

When Commerce conducts a scope inquiry,

and the product in question is already subject to suspension of liquidation, that suspension of liquidation will be continued, pending a preliminary or final scope ruling, at the cash deposit rate that would apply if the product were ruled to be included within the scope of the order.

19 C.F.R. § 351.225(l)(1). Once Commerce issues a final scope ruling to the effect that the product is included within the scope of the order,

Any suspension of liquidation under paragraph (l)(1) . . . of this section will continue. Where there has been no suspension of liquidation, [Commerce]

> will instruct [CBP] to suspend liquidation and to require a cash deposit of estimated duties, at the applicable rate, for each unliquidated entry of the product entered, or withdrawn from the warehouse, for consumption on or after the date of initiation of the scope inquiry.

19 C.F.R. § 351.225(l)(3).  In <u>AMS Assocs.</u>, the Court of Appeals for the Federal Circuit held that, where an unclear order renders a product not subject to an existing order and Commerce clarifies ambiguous scope language to determine that the merchandise is subject to the antidumping order, "the suspension of liquidation and imposition of antidumping cash deposits may not be *retroactive* but can only take effect 'on or after the date of the initiation of the scope inquiry.'"  <u>AMS Assocs.</u>, 737 F.3d at 1344 (citing identical language in 19 C.F.R. § 351.225(l)(2), as the language quoted above in 19 C.F.R. § 351.225(l)(3)).  Although in <u>AMS Assocs.</u>, Commerce issued corrected liquidation instructions explicitly instructing CBP to suspend liquidation retroactively, <u>see</u> <u>AMS Assocs.</u>, 737 F.3d at 1341, the Court of Appeals' holding barring retroactive application of Commerce's findings did not depend upon Commerce taking such additional action. <u>See</u> <u>id.</u> at 1344.

Here, CBP could not determine whether Plaintiff's merchandise was within the scope of the Orders based solely upon the words or the Orders and the physical characteristics of the merchandise.  Therefore, Plaintiff's goods were outside of the scope of the Orders until Commerce interpreted the ambiguous scope language to the effect that Plaintiff's products were subject to the Orders because CBP lacks the authority to interpret ambiguous scope language.  <u>See</u> <u>Xerox</u>, 289 F.3d at 794–95; <u>see also</u> Final Scope Determination at 18.  Since Commerce initiated its scope inquiry on December 30, 2015, <u>see</u> Final Scope Determination at 2, Commerce's regulations only permitted

Commerce to suspend liquidation and collect cash deposits prospectively from the date

of initiation of the scope inquiry.   19 C.F.R. § 351.225(l)(3); <u>AMS Assocs.</u>, 737 F.3d at

1344.

Defendant points to no authority other than CBP's determination to require Plaintiff

to enter its merchandise as subject to the orders for the collection of cash deposits and

suspension of liquidation on Plaintiff's entries.   Defendant and Defendant-Intervenor

argue that, unlike in <u>AMS Assocs.</u>, here Sunpreme's entries were already suspended

prior to the date Commerce initiated its scope inquiry.   Def.'s Resp. Br. 26; SolarWorld

Resp. Br. 26–27.   Therefore, Defendant and Defendant-Intervenor interpret 19 C.F.R.

§§ 351.225(l)(1) and (3) to permit the suspension of liquidation to continue and the

collection of cash deposits on all entries for which liquidation was suspended.   Def.'s

Resp. Br. 26 (citing 19 C.F.R. §§ 351.225(l)(1), (3)); SolarWorld Resp. Br. 24–27. (citing

19 C.F.R. §§ 351.225(l)(1), (3)).   However, Commerce's regulation cannot reasonably be

interpreted to permit the suspension of liquidation and collection of cash deposits to

continue where they resulted from an ultra vires interpretation of the scope language.   To

do so would be to permit CBP to collect cash deposits and suspend cash deposits where

Commerce cannot.   <u>See</u> 19 C.F.R. §§ 351.225(l)(1), (3); <u>AMS Assocs.</u>, 737 F.3d at 1344.

Such an interpretation is unreasonable because it would validate CBP's ultra vires

interpretation and permit the circumvention of Commerce's regulations by allowing CBP

to require a party to enter goods as subject to the Orders before Commerce has

interpreted ambiguous scope language.   Nor can either portion of Commerce's regulation

reasonably be interpreted to permit Commerce to require cash deposits prior to the date

of initiation of the scope inquiry merely because CBP suspended liquidation before that

date without authority to do so.  CBP's purported suspension of liquidation was void *ab*

*initio*.  Commerce could not extend the suspension of liquidation on entries that were not

administratively suspended.

Defendant argues that it may liquidate all unliquidated entries pursuant to its final

scope ruling regardless of when Commerce issued its final scope ruling.  See Def.'s Resp.

Br. 27–28 (citing Ugine & ALZ Belgium v. United States, 551 F.3d 1339, 1349 (Fed. Cir.

2009)).  Ugine is inapposite, and Defendant misconstrues its holding.  In Ugine, the Court

of Appeals for the Federal Circuit held, on narrow grounds, that Commerce may not

impose antidumping duties on unliquidated entries it were not subject to an antidumping

duty order merely because no objection was raised during the course of a subsequent

administrative review. [27]  See id. at 1349.  In Ugine, the Court of Appeals did not confront

an ultra vires interpretation of an order by CBP nor did it interpret Commerce's scope

---

[27] In Ugine, the AD/CVD orders in question covered stainless steel plate in coils from Belgium, and the importers entries were entered as subject to those orders because the importer made what it characterized as a mistake in its invoice by designating some SSPC of German origin as being Belgian in origin.  See Ugine, 551 F.3d at 1344.  Suspension of liquidation occurred because plaintiff appealed the results of Commerce's CVD administrative review, claiming it erroneously believed at the time that all of its goods were subject to the orders, not because of a pending scope inquiry.  See id.  Plaintiff did not recognize that the company had mis-designated certain products as Belgian in origin that it believed should have been treated as German in origin until sometime before the fourth administrative review.  See id. at 1344.  During the course of the fourth administrative review, Commerce interpreted the orders to the effect that plaintiff's imports were not subject to the orders because steel hot rolled in Germany and not further cold rolled in Belgium is not Belgian in origin.  Id. at 1345.  Consequently, Commerce initially issued liquidation instructions that entries entered on or after the initiation of the fourth antidumping administrate review should be liquidated without regard to antidumping duties.  Id.  However, despite its determination that products hot rolled in Germany and not further cold rolled in Belgium are not subject to the orders, Commerce issued liquidation instructions to the effect that entries covered by the first administrative review were subject to duties.  Id.

regulations to permit retroactive suspension of liquidation and collection of cash deposits on entries that were suspended by CBP acting contrary to law.  <u>See</u> <u>id.</u> at 1349.  Plaintiff cites no other authority allowing the collection of cash deposits and suspension of liquidation on entries prior to the initiation of a scope inquiry on merchandise that CBP could not determine fell within the unambiguous scope language based solely upon the words of the orders and physical characteristics.  Therefore, CBP's purported suspension of liquidation is void *ab initio*, and there is no suspension of liquidation to continue under Commerce's regulation.

## CONCLUSION

CBP lacked authority to require Plaintiff to enter its merchandise as subject to the Orders because its determination depended upon an interpretation of the scope language.  Therefore, CBP's collection of cash deposits and suspension of liquidation before Commerce interpreted the Orders to include Plaintiff's merchandise was contrary to law.  As a result, there was no valid suspension of liquidation for Commerce to continue under 19 C.F.R. §§ 351.225(l)(1) and (3).  Therefore, Commerce lacks authority to order the collection of cash deposits on entries prior to the initiation of the scope inquiry.   All cash deposits collected on entries prior to the initiation of the scope inquiry must be returned to Plaintiff.  Judgment will enter accordingly.


                                                  /s/ Claire R. Kelly
                                                  Claire R. Kelly, Judge


Dated: <u>October 11, 2016</u>
           New York, New York